## THE WM. H. BEAMAN.

*(District Court, S. D. New York.  October 22, 1883.)*

1. COLLISION—VESSELS ROUNDING BEND.
    In rounding a bend neither of two approaching vessels has a right to assume that the other will hold her exact course by compass, but only her relative situation in the stream.
2. SAME—SIGNAL.
    Neither should change their relative situation in the stream when they are approaching, so as to involve danger of collision, without timely notice to the other by signal whistles.
3. SAME—CASE STATED.
    Where the tug T., having a tow on a hawser, was coming down the East river, with a strong ebb-tide, near the middle of the stream, and on approaching the Battery ran in towards the New York shore by a sheer, crossing the course

of the tug B., which was rounding the Battery in the opposite direction, and the T.'s tow swerving with the tide against B.'s tow, and neither tug gave any whistle, except one whistle by the T. when too late to be of any use to the B., *held*, that both were in fault for not signaling in time.

In Admiralty.

*J. A. Hyland*, for libelant.

*Beebe & Wilcox*, for claimants.

BROWN, J. This action was brought to recover damages for injuries to the libelant's canal-boat F. F. Stoddard, in tow of the steam-tug William H. Beaman, through a collision with the scow Empire, in tow of the steam-tug James N. Thompson, on the fourteenth of September, 1880, some 300 or 400 feet off from the barge office near the Battery.

The Beaman had the Stoddard lashed upon her starboard side, projecting about 30 feet ahead of her bows. She had left Hoboken between 11 and 12 o'clock, bound for Delancey street, East river. The tide was the last of the ebb in both the North and East rivers, and the Beaman rounded the Battery some 300 or 400 feet off shore. The Thompson at the same time was coming out of the East river, having left Newtown creek, with the Empire in tow upon a hawser of about 20 or 25 fathoms length, bound for Weehawken. She came down about the center of the East river, or a little nearer the New York shore, and as she approached pier No. 3 her helm was put slightly to port. She was then in charge of the deck hand who was acting as pilot, while the captain was below at dinner.

The captain testifies that while at dinner, by turning his head, he could look along the port side of the Thompson, and in that manner noticed the Beaman directly ahead, about a quarter of a mile off, and that he then came out and told the man at the wheel to put the helm more to port. This was done, and by the captain's directions one whistle was blown, as he says, at the same time. If both vessels had continued on the courses they were on prior to the wheel being ported, all the testimony is to the effect that they would have passed well clear of each other, starboard to starboard.

The captain of the Empire heard the one whistle, understood it as a signal by the Thompson that she would pass to the right, and immediately ported his own helm. He testifies that the two tugs were only about 300 feet apart at the time this whistle was given.

The captain of the Beaman, and other witnesses for the libelant, state that when the tugs were about 200 feet apart the Thompson gave a rank sheer, under a port wheel, thereby crossing the bows of the Beaman, and rendering it impossible for the latter to escape from the Empire, which, despite her port helm, swung downward and outward with the ebb-tide, and directly upon the Beaman's tow. No whistle was heard from the Thompson on board the Beaman, and no signal was given by the latter. As soon as the sheer by the Thompson was seen the engines of the Beaman were reversed full speed;

but though her wheel was put to starboard, the effect of the tow upon her starboard side was to cant her head one or two points to port, and the Stoddard struck the Empire about amidships, on her port side, and received some damage.

No other vessels were in the way, and this collision could not have happened had the rules been observed by either of the tugs. Each was evidently desirous of availing itself of the slack water near the Battery. The Thompson having come down about the middle of the river, some 900 or 1,000 feet off from the New York shore, in rounding the Battery, on seeing other vessels coming around the same bend, was bound, before changing her relative situation in the stream, and running in-shore, to give timely notice, by signals, of her intention to do so. In this case one whistle was blown, sufficient to be heard on the scow astern, but it was not heard or noticed by any persons on the Beaman or the Stoddard. Without considering the question, whether the blast of the whisle given was probably a sufficient one, I am satisfied it was given when the tugs were much less than a quarter of a mile apart, and altogether too late to meet the requirements of the rules, or to enable the Beaman, with her tow, to avoid the swing of the Empire. In effect, the Thompson changed her course within about 300 feet of the Beaman, and when they were approaching each other at the combined speed of about eight miles an hour, and when scarcely half a minute apart.

The Beaman was, in like manner, bound to signal to the other vessel on which side she intended to pass. The actual lines of the courses of the two when they first saw each other were crossing, as in the fifth situation, and by the inspector's rules each was bound to signal to the other. Had this been done when they were first sighted, there is no reason why the collision should not have been avoided. The course of the Thompson, when first seen, may have been towards Communipaw, and to the starboard of the Beaman. But as the Thompson was then upon the bend, the Beaman had no right to assume that the Thompson was going to Communipaw, or would hold the exact course she was on. The ordinary traffic around the Battery forbids any such assumption. All that she had a right to assume was that the Thompson would not change her relative position in the stream in going around the bend, without a clear and timely signal.

I do not find any fault with the Beaman in backing as she did. The direction of her bows was doubtless thereby somewhat changed. But backing was her evident duty, and it tended to avoid the collision, although it changed the position in which the blow was received.

Both tugs must, therefore, be held in fault for not giving the signals required by the rules, and judgment is ordered against both in the form authorized in such cases, (*The Sterling*, 106 U. S. 647; S. C. 1 Sup. Ct. Rep. 89,) with costs, with a reference to compute the damages.